Matter of Charles Q. (Pamela Q.) (2020 NY Slip Op 02131)





Matter of Charles Q. (Pamela Q.)


2020 NY Slip Op 02131


Decided on April 2, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 2, 2020

526836 526838 526841

[*1]In the Matter of Charles Q., Alleged to be an Abused, Severely Abused And/Or Neglected Child. St. Lawrence County Department of Social Services, Respondent; Pamela Q., Appellant, et al., Respondent. (And Two Other Related Proceedings.)

Calendar Date: February 20, 2020

Before: Clark, J.P., Mulvey, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for appellant.
St. Lawrence County Department of Social Services, Canton (Amanda Calton of counsel), for respondent.
Omshanti Parnes, Plattsburgh, attorney for the children.
Lisa A. Burgess, Indian Lake, for Mark U.



Reynolds Fitzgerald, J.
Appeals from three orders of the Family Court of St. Lawrence County (Morris, J.), entered May 9, 2018, which partially granted petitioner's applications, in three proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be abused, severely abused and/or neglected.
Respondent Pamela Q. (hereinafter respondent) is, as relevant here, the mother of a daughter (born in 2001) and two sons (born in 2002 and 2004) and the grandmother of two grandsons (born in 2013 and 2015). Respondent is also the mother of another daughter (born in 1994; hereinafter the adult daughter). Respondent Harry S. (hereinafter the boyfriend) is respondent's boyfriend who, from 2005 until July 2017, resided in respondent's home at least every other weekend. The boyfriend is not biologically related to any of the children. In May 2017, the daughter disclosed to her school principal that she was being sexually abused by the boyfriend, and the principal reported this disclosure and the police became involved. Thereafter, petitioner commenced three Family Ct Act article 10 proceedings alleging that, because respondent allowed the boyfriend to sexually abuse the daughter, the daughter is an abused, neglected and sexually abused child and the four other children — the sons and grandsons — are derivatively abused, neglected and severely abused. At the conclusion of the resulting fact-finding hearing, Family Court found that the boyfriend committed the offenses of rape in the first degree and rape in the second degree against the daughter and, as a result, the daughter was neglected by respondent and abused and neglected by the boyfriend, and that the sons and grandsons were derivatively neglected by respondent and derivatively neglected and derivatively abused by the boyfriend. Respondent appeals.
Respondent initially contends that the daughter's out-of-court statements were not sufficiently corroborated and the adult daughter's testimony was not relevant and reliable. "A child's prior out-of-court allegations of abuse or neglect are admissible in evidence if such statements are sufficiently corroborated by other evidence tending to establish their reliability" (Matter of Kylee R. [David R.], 154 AD3d 1089, 1089-1090 [2017], lv denied 30 NY3d 911 [2018] [citations omitted]; see Matter of Lawson O. [Andrew O.], 176 AD3d 1320, 1321 [2019]). "[O]nly a relatively low degree of corroborative evidence is necessary to satisfy this standard, and the reliability of the corroboration, as well as issues of credibility, are matters entrusted to the sound discretion of Family Court and will not be disturbed unless clearly unsupported by the record" (Matter of Lawson O. [Andrew O.], 176 AD3d at 1321 [internal quotation marks and citations omitted]).
At the fact-finding hearing, a State Police investigator testified that he interviewed the daughter and, at the conclusion of the interview, she signed a sworn statement.[FN1] The investigator further testified that, as memorialized in the daughter's sworn statement, the daughter disclosed that, at one point, she observed the boyfriend and the adult daughter (her sister)[FN2] standing in a closet with their pants down, and that when the adult daughter moved out of the house, the boyfriend started "sexually touching" her. In her statement, the daughter avowed that the boyfriend touched her in inappropriate areas, performed oral sex on her and forced her to have intercourse. She stated that this happened almost every time that the boyfriend came to her house. The adult daughter cross-corroborated this testimony by testifying that when she was younger, she too had been sexually abused by the boyfriend in a similar manner and that the daughter caught her and the boyfriend having sexual relations in a closet (see Matter of Nicole V., 71 NY2d 112, 124 [1987]; Matter of Derrick GG. [Jennifer GG.], 177 AD3d 1124, 1125 [2019]). The daughter's former school principal testified that the daughter informed him that the boyfriend had inappropriately touched her and that they were having sex. He also testified that the daughter's demeanor changed; she shut down after being advised that he had to report the abuse, her performance and grades deteriorated during the year and she wanted to be emancipated from respondent. Lastly, Family Court was permitted to draw a strong inference against the boyfriend, who elected not to testify or present any evidence in his favor (see Matter of Kylee R. [David R.], 154 AD3d at 1090; Matter of Ian H., 42 AD3d 701, 703 [2007]). On the record before us, the daughter's statement regarding the boyfriend's abuse was sufficiently corroborated, and a sound and substantial basis exists in the record to support a finding that respondent neglected the daughter (see Matter of Lawson O. [Andrew O.], 176 AD3d at 1323).
"Turning to Family Court's derivative neglect findings, evidence that a parent neglected a child is admissible to prove that the parent neglected another child, but may not provide the sole basis for a determination of derivative neglect unless the parent's past conduct demonstrates fundamental flaws in the parent's understanding of the duties of parenthood — flaws that are so profound as to place any child in his or her care at substantial risk of harm" (Matter of Derrick GG. [Jennifer GG.], 177 AD3d 1124 at 1126 [internal quotation marks, brackets and citations omitted]; see Matter of Warren RR. [Brittany Q.], 143 AD3d 1072, 1074 [2016], lv denied, 29 NY3d 905 [2017]). The caseworker testified that respondent did not believe the daughter's allegations, she was tired of the investigation, she encouraged the daughter to tell the caseworker that she had lied, she failed to comply with the terms of petitioner's safety plan by allowing the boyfriend to be in the daughter's presence, and she took the children to visit the boyfriend, all while the investigation into the sex abuse of the daughter was pending. Further, the court found that the sons and grandsons were home when the daughter was subjected to sexual contact and the boyfriend abused respondent's two other daughters (see Matter of Ian H., 42 AD3d at 704).
We find that, on the record before us, a sound and substantial basis exists to support Family Court's finding that respondent failed to meaningfully and appropriately respond to the daughter's disclosure of sexual abuse, especially given the family history of sexual abuse of the daughter and adult daughter by the boyfriend, which demonstrates the requisite impaired level of judgment so as to place the sons and grandsons at a substantial risk while in her care (see Matter of Derrick GG. [Jennifer GG.], 177 AD3d at 1126; Matter of Aiden LL. [Christa LL.], 166 AD3d 1413, 1416 [2018]). As such, we uphold Family Court's determination that respondent derivatively neglected the sons and grandsons.
Clark, J.P., Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the orders are affirmed, without costs.



Footnotes

Footnote 1: This statement was admitted into evidence at the hearing.

Footnote 2: The adult daughter was a minor at the time.